# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

FEDERAL DEPOSIT INSURANCE
CORPORATION, AS RECEIVER FOR
ORION BANK OF NAPLES, FLORIDA

                                                 CASE NO. 2:13-cv-00208-UA-SPC

                   Plaintiff,

v.

NASON YEAGER GERSON WHITE &
LIOCE, P.A., ALAN I. ARMOUR II, RYAN P.
AIELLO

                   Defendants.

---

## PLAINTIFF'S OPPOSITION TO DEFENDANTS'
## AMENDED MOTION TO TRANSFER VENUE OR,
## IN THE ALTERNATIVE, DISMISS ACTION WITH PREJUDICE

The Federal Deposit Insurance Corporation as Receiver ("FDIC-R") for Orion Bank of Naples, Florida ("Orion" or "Bank") hereby files its Opposition ("Opposition") to Defendants' Amended Motion to Transfer Venue or, in the Alternative, Dismiss Action with Prejudice (ECF No. 14 (the "Motion")).

### PRELIMINARY STATEMENT

In its Complaint (ECF No. 1), the FDIC-R has alleged facts that, if proven, establish that the Defendants breached their fiduciary and professional duties to the Bank when they failed to recognize and/or respond to clear signs that the Bank's officers were engaging in suspicious behavior. As alleged in the Complaint, the Defendants were retained to prepare documents and close certain loans (the "Southeast/Metro Loans") on behalf of the Bank. (Compl. ¶ 15.) During the course of this representation, the Defendants received, but ignored, substantial evidence that these transactions were not legitimate. Specifically, the Defendants ignored that the Bank's

officers intended to disburse the Southeast/Metro Loans in clear contravention of the restrictions imposed by the Board of Directors. (*Id.* ¶¶ 21-22, 27-28.) The Defendants also ignored that Mr. Francesco "Frank" Mileto ("Mileto") clearly owned and controlled the two borrower entities for the loans, despite the Bank's specifically expressed concern that such ownership and control be "clearly not with Frank Mileto." (*Id.* ¶¶ 29-30.) Under the circumstances, it was obvious that the Southeast/Metro Loans had been designed as straw loans to evade the Bank's legal lending limit. (*Id.*) Finally, the Defendants ignored that the Bank's officers had initially proposed openly financing Mileto's purchase of stock in the Bank's holding company, canceled that proposal shortly thereafter, and then ultimately arranged to finance Mileto's stock purchase secretly with funds from the Southeast/Metro Loans. (*Id.* ¶¶ 19-20, 31-32.) Under the circumstances, it was obvious that the Bank's officers sought to achieve illicitly through deception what they could not accomplish openly.

Given the suspicious circumstances detailed in the Complaint, the Defendants' defense that they "were unaware that the Bank was secretively committing fraud" fails to insulate them from liability. (*See* Motion at 16.) This defense is particularly unconvincing given that, as alleged in the Complaint, the Defendants prepared closing statements that did not accurately reflect the actual use of the funds disbursed from these loans. (*Id.* ¶ 24.) At the very least, the Complaint makes clear that the Defendants should have recognized and warned the Bank that the Southeast/Metro Loans proceeded on terms that diverged so suspiciously from the underlying documentation. Contrary to Defendants' arguments, the FDIC-R's theory in this case does not "impose[] an extreme duty upon Defendants to affirmatively investigate the Bank's covert activities." (*See* Motion at 16.) Rather, as detailed further below, the FDIC-R asserts only that the Defendants had a duty to respond to red flags that were readily apparent without special

investigation on their part.  Indeed, even the Defendants' own cited authority reflects that the

Defendants had a duty to disclose any <u>known</u> material information –which surely includes the

suspicious circumstances described in the Complaint – to their client, the Bank.  Nor can the

Defendants escape their liability by imputing the actions of the Bank's officers to the FDIC-R.

Under Florida law, the defenses of *in pari delicto* and unclean hands simply do not apply to the

FDIC-R, which has "cleansed" the Bank of its officers' fraud through the receivership.  And

because the Defendants' other arguments also rely on inapplicable principles and authorities, the

Complaint cannot be dismissed under Federal Rule of Civil Procedure 12(b)(6).

Finally, the Defendants' request that this action be transferred to the Southern District of

Florida should also be denied.  At the outset, the FDIC-R notes that the Defendants do not even

attempt to argue that transfer is appropriate or advisable if this Court is in fact a proper venue for

this action under 28 U.S.C. § 1391(b).  Venue is proper here primarily because the Bank was

harmed in this district, and courts have recognized that "substantial events occurred within a

venue when harm or injury was suffered in that venue."  *Mobile Diagnostic Imaging, Inc. v.

Gormezano*, No. 12-60888-CIV-COHN/SELTZER, 2012 U.S. Dist. LEXIS 111830, at *7 (S.D.

Fla. Aug. 9, 2012).  Consequently, this action should not be transferred.

The Defendants' Motion should be denied in its entirety.

## ARGUMENT

### I.    THE COMPLAINT SHOULD NOT BE DISMISSED

Federal Rule of Civil Procedure 8 requires a "short and plain statement of the claim."

Fed. R. Civ. P. 8(a).  A complaint is generally sufficiently pled if it provides "fair notice of what

the plaintiff's claim is and the grounds upon which it rests."  *Leavitt v. Cole*, 291 F. Supp. 2d

1338, 1341 (M.D. Fla. 2003) (citation omitted).  In order to survive a motion to dismiss under

Rule 12(b)(6), a complaint need only plead sufficient facts to state a claim that is "plausible on its face." *Twombly*, 550 U.S. at 570. Additionally, a plaintiff "need not plead specific legal theories in the complaint, so long as the other side receives notice as to what is at issue in the case." *American Timber & Trading Co. v. First Nat'l Bank*, 690 F. 2d 781, 786 (9th Cir. 1982) (citing *Oglala Sioux Tribe v. Andrus*, 603 F.2d 707, 714 (8th Cir. 1979)). The general rule is that a plaintiff may recover on any legal theory so long as there is no "shift in the thrust of the case" that prejudices the defendants.[1] *Andrus*, 603 F.2d at 714.

### A.  As Alleged in the Complaint, the Defendants Breached Their Duties to Recognize and Respond to Obvious Red Flags

### 1.  The Defendants Owed the Bank Duties of Care and Loyalty

In Florida, as elsewhere, a plaintiff asserting a legal malpractice claim must show (1) an attorney-client relationship; (2) the attorney's neglect of a reasonable duty; and (3) that the neglect of that duty was the proximate cause of loss to the plaintiff. *Olmsted v. Emmanuel*, 783 So.2d 1122, 1125 (Fla. Dist. Ct. App. 2001). Florida law further recognizes that the attorney-client relationship imposes fiduciary duties on attorneys, including a fiduciary duty of loyalty.[2] *Resolution Trust Corp. v. Holland & Knight*, 832 F. Supp. 1528, 1530-31 (S.D. Fla. 1993); *see*

---

[1]  The FDIC-R notes that the Motion leaves no doubt that the Defendants have ample notice with respect to their potential vicarious liability. (*See* Motion at 21 (stating that the Defendants infer allegations of vicarious liability from the Complaint).) The court should therefore reject the Defendants' argument that the Complaint should be dismissed because claims based on vicarious liability "must be pled independently and distinctly." (Motion at 21 (citing *Goldschmidt v. Holman*, 571 So.2d 422, 423 (Fla. 1990).) The FDIC-R further notes that the Defendants rely on a Florida state court decision interpreting and applying the Florida Rules of Civil Procedure, but fail to cite any authority regarding the Federal Rules of Civil Procedure, which govern this case.

[2]  For this reason, the Defendants' argument that "there is no fiduciary relationship at issue" should also be rejected. (*See* Motion at 19-20.)

*also FDIC v. Martin*, 801 F. Supp. 617, 620 (M.D. Fla. 1992); *Weaver v. Mateer & Harbert, P.A.*, No. 5:09-CV-514-Oc-34TBS, 2012 U.S. Dist. LEXIS 104771, at *44 (M.D. Fla. July 27, 2012). Courts have further explained that the fiduciary duty of loyalty obligates an attorney to make "full and fair disclosure of material facts" to his or her client. *Martin*, 801 F. Supp. at 620 (denying summary judgment to defendants in attorney malpractice suit where there was evidence that defendants knew but failed to disclose material information about creditworthiness of potential borrowers of their client bank). The breach of fiduciary duty is "distinct and independent from professional negligence but still comprises legal malpractice." *Id.* (citing 1 Ronald E. Mallen & Jeffrey M. Smith, *Legal Malpractice* § 11.1, at 633 (3d ed. 1989)). The Complaint asserts both theories against the Defendants. (Compl. ¶¶ 39-46.)

Additionally, an attorney may not assist a client in conduct that the attorney reasonably should know is criminal. FLA. RULE PROF. CONDUCT 4-1.2(d). And when representing an organization instead of an individual, an attorney is expected to respond appropriately to evidence that a client's officer is breaking the law, including by, *inter alia*, "referring the matter to higher authority . . . including, if warranted by the seriousness of the matter, referral to the highest authority that can act in behalf of the organization." FLA. RULE PROF. CONDUCT 4-1.13(b). These more specific statements help clarify an attorney's fiduciary obligations when he or she discovers evidence that an organizational client's officers may be breaking the law: the attorney must not participate in the crime, and should report his or her concerns to higher authority.

*Grant Thornton, LLP v. FDIC*, 694 F. Supp. 2d 506 (S.D. W. Va. 2010), *rev'd on other grounds*, 435 F. App'x 188 (4th Cir. 2011), is instructive. *Grant Thornton* arose out of a bank that collapsed after suffering enormous losses due to rampant fraud in its high-risk mortgage

securitization program. *Id.* at 510-11. After being appointed receiver, the FDIC sued the failed

bank's former outside auditor. *Id.* at 511. The auditor then filed a third party complaint for

contribution against the failed bank's former law firm, against whom the FDIC had also

threatened claims. *Id.* at 511, 514. Subsequently, the FDIC reached a settlement with the law

firm and obtained a judgment against the auditor in court. *Id.* at 509. The auditor moved for a

settlement credit. *Id.*

To determine the correct credit amount, the court conducted a four-day hearing to

evaluate the FDIC's settled claims against the law firm. *Id.* at 516. In that hearing, the FDIC

established that the defendant law firm had learned, *inter alia,* that several loan originators for

the securitization program had been accused of fraud, *id.* at 516-17, that others had admitted to

attempting to defraud the bank, *id.* at 518, and that the bank's Chief Financial Officer was a

completely unqualified sham installed purely to placate regulators. *Id.* at 519.

The court held that the law firm "had a duty to disclose the foregoing red flags to [the

failed bank's] Board." *Id.* at 520. The court had little difficulty brushing aside arguments that

the law firm "had no duty to inform [the] Board of the . . . troubling issues surrounding the

transactions." *Id.* at 521. As a fiduciary, an attorney has broad disclosure obligations: namely, to

"disclose anything known to him which might affect his client's decision 'whether or how to

act.'" *Id.* at 521. The law is the same in Florida. *See Martin*, 801 F. Supp. at 620 (attorney's

duty is to "make full and fair disclosure of material facts").

    2.    The Defendants Breached Their Duties By Failing to Recognize and
           Respond to Obvious Red Flags

The Defendants failed to meet their professional and fiduciary obligations to the Bank

when they failed to recognize and/or ignored obviously suspicious circumstances before

disbursing millions of dollars of their clients' money. As described in the Complaint, the

Defendants permitted the Southeast/Metro Loans to go forward despite receiving, reviewing, and even <u>preparing</u> documentation that was so deceptive that any reasonable attorney would have recognized a responsibility to disclose concerns to higher authority in the Bank. Most damningly, the Defendants prepared closing statements for these transactions that did not accurately reflect the actual disbursement of funds detailed in the wiring instructions they had previously received and reviewed. (Compl. ¶¶ 24-25.) Moreover, the Defendants prepared these inaccurate closing statements after receiving substantial evidence that (1) the intended use of the disbursed funds completely ignored the limitations approved by their client's highest authority - the Bank's Board of Directors (*id.* ¶¶ 21-22, 27-28); (2) the transactions at issue represented thinly veiled violations of the Bank's legal lending limit, and that the purported named borrowers were in fact fraudulent "straw borrowers" standing in for Mr. Mileto (*id.* ¶¶ 19, 29-30); and (3) that the subject transactions concealed a stock loan that the Defendants should have known was illegal. (*Id.* ¶¶ 19-20, 31-32.) In short, the Complaint makes clear that the Defendants ignored what should have been extremely "troubling issues" when they blindly pushed ahead to assist the Bank's officers in closing the transactions that ultimately turned out to be fraudulent. *See Grant Thornton*, 694 F. Supp. 2d at 521. In so doing, they breached their professional and fiduciary duties to the Bank.

### 3. The Defendants' Motion Mischaracterizes the FDIC-R's Claims and the Scope of Their Duties to the Bank

To escape liability for their failures, the Defendants grossly distort the allegations and claims set forth in the Complaint. According to the Defendants, the FDIC-R has only alleged that "Defendants were unaware that the Bank was secretively committing fraud," and seeks to impose "an extreme duty upon Defendants to affirmatively investigate the Bank's covert activities." (Motion at 16.) The Defendants further assert that there is "no doubt that the Bank's

illegalities were conducted with the intent to deceive Defendants and to evade Defendants' awareness." (*Id.* at 17.)  The Defendants argue that, based on the above, the Complaint must be dismissed because attorneys have no duty "to discover and advise on unknown matters that are outside the scope of its representation." (*Id.* at 16 (citing *McCarty v. Browning*, 797 So.2d 30, 31 (Fla. Dist. Ct. App. 2001).)

Unfortunately for the Defendants, the Complaint's allegations – which are assumed to be true – directly contradict their factual assertions.  As described above, the Complaint details specific information known to the Defendants that would have raised strong suspicions in any reasonably competent and responsible attorney, and specifically alleges that the Bank's officers did not conceal their activities from the Defendants. (*See, e.g.*, Compl. ¶¶ 15-20, 22, 24, 27-32.) Moreover, while the Defendants rely on the purportedly narrow scope of their representation, the Complaint alleges that the Defendants <u>prepared closing statements that did not accurately reflect the actual use of the disbursed funds</u>. (*Id.*¶¶ 24-25.)  Presumably, the Defendants will not – indeed, cannot – deny that they had an obligation to prepare accurate closing statements when "retained to prepare documents and close the loans." (*See* Motion at 18.)  In short, the issue is not whether the Defendants had a duty to "affirmatively investigate the Bank's covert activities" (Motion at 16), but whether the Defendants had a duty to respond to red flags that were readily apparent from the normal course of their representation.

When the nature of the FDIC-R's claims is viewed correctly, even the Defendants' own cited authority suggests that the Complaint should not be dismissed.  In *Browning*, for example, the court recognized that "an attorney has a duty to advise the client of legal problems not within the scope of the task an attorney was retained to perform, <u>but of which the attorney becomes aware</u>." 797 So. 2d at 31 (emphasis added); (*see* Motion at 16-17 (citing *Browning*)).  Similarly,

in *Maillard v. Dowdell*, 528 So.2d 512 (Fla. Dist. Ct. App. 1988), another case cited by the

Defendants, the court dismissed the claims at issue in part because the plaintiff failed to assert

that the attorney "knew of facts material to the [representation] but failed to disclose those facts

to them." *Dowdell*, 528 So.2d at 515.  Most misleadingly, the Defendants argue for dismissal

based on *In re Cascade International Securities Litigation*, 840 F. Supp. 1558 (S.D. Fla. 1993).

(*See* Motion at 18-19.)  According to the Defendants, that case stands for the proposition that law

firms need not "fully investigate their clients at any hint that they may be conducting fraudulent

activities."  (*Id.* at 19 (citing *In re Cascade Int'l Sec. Litig.*, 840 F. Supp. at 1564).)  First, as

detailed above, the Complaint alleges far more than a "hint" of fraud.  Moreover, the

Defendants' supremely selective citation conveniently omits the fact that this decision turned

heavily on the fact that the plaintiffs were <u>not</u> the defendant law firms' clients.  *In re Cascade

Int'l Sec. Litig.*, 840 F. Supp. at 1564 ("As Plaintiffs have failed to demonstrate any kind of

fiduciary relationship . . . no duty to disclose exists."); *compare Martin*, 801 F. Supp. at 620.

Indeed, the court in that case <u>specifically distinguished</u> that situation from precedent involving "a

plaintiff with which the law firm had a fiduciary relationship." *In re Cascade Int'l Sec. Litig.*,

840 F. Supp. at 1564.[3]

    The Complaint alleges that the Defendants failed to disclose material information of

which they became aware, and thereby breached the professional and fiduciary duties to disclose

that they owed to the Bank.  The Complaint should not be dismissed.

---

[3]  Similarly, the Defendants' reliance on *Redland Estates, Inc. v. Lynn*, 920 So.2d 1218 (Fla.
Dist. Ct. App. 2006) is unavailing.  (Motion at 20-21.)  That case involved an attorney's
disbursement of funds, as escrow agent, from a third party to her own client.  *Lynn*, 920
So.2d at 1219.  It did not involve an attorney disbursing his or her clients' own funds despite
numerous red flags that the client's purported authorization to do so was fraudulent or
otherwise suspect.

**B.      The Actions of the Bank's Officers Are Not Imputed to the Receiver**

The Defendants also argue that they cannot be held liable because the fraudulent actions

of the Bank's officers must be imputed to the FDIC-R, and that the FDIC-R's claims are

therefore barred by the in pari delicto and unclean hands doctrines.  (Motion at 9-16.)

Defendants are simply incorrect.  Florida courts have recognized that, under the circumstances

present here, "defenses such as unclean hands do not apply against a receiver when they would

have applied against the entity that was placed into receivership." *Freeman v. Dean Witter

Reynolds, Inc.*, 865 So.2d 543, 550 (Fla. Dist. Ct. App. 2003) (citing Am. Jur. 2d Receivers §

372 (2001)).  Consequently, a "receiver may . . . pursue certain claims that would be barred by

the defense of *in pari delicto* if pursued by the corporation that was placed in receivership.  *Id.*

(citing *Scholes v. Lehmann*, 56 F.3d 750, 754 (7th Cir. 1995)); *see also Iglesia Cristiana El Buen

Samaritano, Inc. v. Guardian Servs., LLC*, No. 11-21888-CIV-GOODMAN, 2011 U.S. Dist.

LEXIS 134235, at *13-17 (S.D. Fla. Nov. 21, 2011) (in pari delicto doctrine does not apply to

receiver where "corporation-in-receivership had at least one honest stakeholder"); *Goldberg v.

Chong*, No. 07-20931-CIV-HUCK, 2007 U.S. Dist. LEXIS 49980, at *28 (S.D. Fla. July 11,

2007) ("Case law . . . indicates that the doctrine of *in pari delicto* does not apply when a

Receiver has taken over for the wrongdoing entity."); *accord Lehmann*, 56 F.3d at 754 ("the

defense of in pari delicto loses its sting when the person who is in pari delicto is eliminated").

In *Freeman*, the plaintiff was the receiver for a financial corporation that was

"incorporated . . . as the centerpiece to a Ponzi scheme."  865 So.2d at 545.  The plaintiff

receiver sued certain defendants, alleging that they "provided financial or legal services" to the

corporation "under circumstances where they allegedly knew or should have known that the

[corporation's original owners] were operating a Ponzi scheme." *Id.* at 547. The defendants moved to dismiss on numerous grounds, including that "the receiver was *in pari delicto* with the actions of the members of the Ponzi scheme." *Id.* at 548.

In ruling on the motion to dismiss, the *Freeman* court reviewed previous legal authority to conclude that "a receiver does not always inherit the sins of his predecessors." *Id.* at 550. The court noted that case law distinguished "between an honest corporation with rogue employees . . . and a sham corporation created as the centerpiece of a Ponzi scheme." *Id.* at 552. Ultimately, the court granted dismissal because "[i]n this case, [the corporation-in-receivership] was controlled exclusively by persons engaging in its fraudulent scheme and benefitting from it." *Id.* at 551 (emphasis added). It was "not a large corporation with an honest board of directors and multiple shareholders, suffering from the criminal acts of a few rogue employees in a regional office." *Id.* And as particularly relevant here, the court also grounded its dismissal in its conclusion that the plaintiff's "theory based on a duty to disclose misconduct . . . simply cannot stand because no honest person existed within the corporation to whom such conduct could be reported." *Id.* at 552 (emphasis added). Indeed, the court specifically emphasized that the receiver's ability to pursue its claims was "not affected so much by the doctrine of *in pari delicto* as it is by the factual history of this Ponzi scheme." *Id.* at 550. Subsequent courts have recognized that *Freeman* stands for the proposition that defenses based on *in pari delicto* and unclean hands generally do not apply to a receiver for a corporation that "had at least one honest stakeholder who could have been defrauded." *Iglesia Cristiana El Buen Samaritano, Inc.*, 2011 U.S. Dist. LEXIS 134235, at *17 (rejecting *in pari delicto* and unclean hands defense under *Freeman*); *see also Goldberg*, 2007 U.S. Dist. LEXIS 49980, at *28-29 (citing *Freeman*).

Here, the FDIC-R brings claims, as receiver, on behalf of the Bank's honest stakeholders, including its depositors, accountholders, other creditors, and stockholders. (Compl. ¶ 4.) The Complaint makes clear that the Bank had an "honest board of directors" but suffered "from the criminal acts of a few rogue employees." (*Id.* ¶ 1 (Bank's officers conspired to "deceive the Bank's Board of Directors")); *see also Freeman*, 865 So.2d at 551. Under these circumstances, the FDIC-R's receivership of the Bank "cleanse[s]" the Bank of the fraud of its officers, and obviates defenses based on unclean hands and in pari delicto. *See Freeman*, 865 So.2d at 551; *see also Iglesia Cristiana El Buen Samaritano, Inc.*, 2011 U.S. Dist. LEXIS 134235, at *17 (quoting *Freeman*, 865 So.2d at 551); *accord FDIC v. O'Melveny & Myers*, 615 F.3d 17, 19 (9th Cir. 1995) (holding under California law that bank's inequitable conduct should not be imputed to the FDIC as receiver).[4]

The Court should reject the Defendants' unclean hands and in pari delicto defenses.

## II.    VENUE IS PROPER IN THIS DISTRICT

Venue is proper in this Court because "a substantial part of the events or omissions giving rise to the claim occurred" in the Middle District of Florida. *See* 28 U.S.C. § 1391(b). Where venue is proper in more than one district, a plaintiff is "not required to select the venue with the *most* substantial nexus to the dispute." *Careplus Health Plans, Inc. v. Crespo*, No. 8:05-

---

[4]    The Defendants also rely on *FDIC v. Harrison*, 735 F.2d 408 (11th Cir. 1984). (*See* Motion at 15.) That case is questionable precedent at best, as it relied on a discredited distinction between "sovereign" and "proprietary" functions of government. *See Harrison*, 735 F.2d at 411; *see also FSLC v. Two Rivers Associates, Inc.*, 880 F.2d 1267, 1277 n. 15 (conclusion that "federal policy is not strong when the FDIC is acting in its receivership capacity" is "unwarranted.") (citing *Langley v. FDIC*, 484 U.S. 86 (1988)). Moreover, *Harrison* is also irrelevant to this case. It stands only for the proposition that the FDIC may be equitably estopped by its own post-closing conduct, and does not support Defendants' argument that the pre-closing conduct of the Bank's officers is properly imputed to the FDIC as Receiver. *See Harrison*, 735 F.2d at 413.

CV-2010-T-27MAP, 2006 U.S. Dist. LEXIS 31839, at *6 (M.D. Fla. May 18, 2006) (quotation and citation omitted) (emphasis in original). Rather, the plaintiff may select any venue permissible under 28 U.S.C. § 1391(b). *Id.*

Courts have recognized that "substantial events occurred within a venue when harm or injury was suffered in that venue." *Mobile Diagnostic Imaging, Inc. v. Gormezano*, No. 12-60888-CIV-COHN/SELTZER, 2012 U.S. Dist. LEXIS 111830, at *7 (S.D. Fla. Aug. 9, 2012) (citations omitted). In *United States v. Secretary, Florida Department of Corrections*, the United States brought suit in the Southern District of Florida against certain defendants based on the defendants' alleged failure to provide kosher meals for Jewish prisoners. No. 12-22958-CIV-SEITZ/SIMONTON, 2012 U.S. Dist. LEXIS 179596, at *1 (S.D. Fla. Dec. 9, 2012). The defendants argued that venue was proper only in the Northern District of Florida, "where the policy decision not to provide kosher meals was made." *Id.* at *4. The court swiftly rejected this argument, noting that "a claim only exists if someone has been harmed by the policy decision." *Id.* Because "harm has clearly occurred in the Southern District of Florida," the court held that venue was proper in that district. *Id; see also Gormezano*, 2012 U.S. Dist. LEXIS 111830, at *8-10 (venue proper in part because plaintiff suffering damages in the district at issue).

In this case, the Complaint makes clear that the requisite "substantial part" of events giving rise to this litigation occurred in this district. Most importantly, the injured party, the Bank, was headquartered in this district and suffered harm in this district. (*See, e.g.*, Compl. ¶¶ 12, 33.) Additionally, certain of the Bank's officers communicated with the Defendants about the transactions at issue from the Bank's headquarters in this district. (*Id.* ¶ 17.) Finally, those transactions also involved certain properties located in this district. (*Id.* ¶ 18.) Given the above,

it is no surprise that this district was the venue in which Messrs. Mileto, Williams, Hebble, and Guerzon were convicted for their roles in these transactions. (*Id.* ¶¶ 35-38.)

Significantly, the declaration ("Declaration") submitted by the Defendants does not dispute any of the above.[5] (*See* Motion, Ex. A.) Rather, the Declaration merely states generally that the Defendants were physically located in the Southern District of Florida while representing the Bank in connection with these transactions. (*Id.* ¶¶ 7-10)  The Defendants suggest that this Declaration is sufficient to find venue improper solely because of language from the Eleventh Circuit Court of Appeals that the venue inquiry should "focus on relevant activities of the defendant, not of the plaintiff." (Motion at 6 (citation omitted).)  But Defendants' argument is virtually identical to that rejected by the court in *United States v. Secretary, Florida Department of Corrections. See* 2012 U.S. Dist. LEXIS 179596, at *4-5.   As other courts have recognized, it would be "too restrictive" to require courts to "*only* consider a defendant's activities in applying the 'substantial part' test." *See Crespo*, 2006 U.S. Dist. LEXIS 31839, at *7 n.6 (emphasis added).  Venue is also proper, *inter alia*, in a district where harm to the plaintiff occurred. *Sec'y, Florida Dept. of Corrections*, 2012 U.S. Dist. LEXIS 179596, at *5.

Venue is proper in the Middle District of Florida.

---

[5]   The Court should accept all allegations of the Complaint as true, unless contradicted by the defendants' affidavits. *Watson v. Community Educ. Ctrs., Inc.*, 2:10-CV-0078-36SPC, 2011 U.S. Dist. LEXIS 89520, at *5 (M.D. Fla. Aug. 11, 2011) (quotation and citation omitted).

## CONCLUSION

For the foregoing reasons, the Defendants' Amended Motion Transfer Venue or, in the

Alternative, Dismiss Action with Prejudice should be denied.

Dated: June 10, 2013                      Respectfully submitted,

                                          **HUGHES HUBBARD & REED LLP**

                                          By: /s Dennis S. Klein
                                          Dennis S. Klein
                                          Fla. Bar # 0091767
                                          klein@hugheshubbard.com
                                          201 South Biscayne Boulevard, Suite 2500
                                          Miami, Florida 33131-4332
                                          Tel:  305-358-1666
                                          Fax:  305-371-8759

                                          *Counsel for the Federal Deposit Insurance*
                                          *Corporation*

62356064_1

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 10, 2013, I electronically filed the forgoing document with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties identified on the Service List below in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By /s Dennis S. Klein
Dennis S. Klein

## SERVICE LIST

Via CM/ECF

Jonathan Vine, Esq.
Alan St. Louis, Esq.
COLE, SCOTT & KISSANE, P.A.
1645 Palm Beach Lakes Blvd., 2nd FL
West Palm Beach, FL 33401

*Counsel for Defendants*

62356064_1