## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

FEDERAL DEPOSIT INSURANCE
CORPORATION, as Receiver for Orion
Bank of Naples, Florida,

        Plaintiff,

v.                                Case No:  2:13-cv-208-FtM-38UAM

NASON YEAGER GERSON WHITE
& LIOCE, P.A., ALAN I. ARMOUR, II,
and RYAN P. AIELLO,

        Defendants.

_____/

## <u>ORDER</u>[1]

    This matter comes before the Court on Defendants Nason Yeager Gerson White

& Lioce, P.A., Alan I. Armour, II, and Ryan P. Aiello's Amended[2] Motion to Transfer

Venue or, in the Alternative, Dismiss Action with Prejudice (Doc. #14) filed on May 7,

2013.  Plaintiff, Federal Deposit Insurance Corporation, as receiver for Orion Bank of

Naples, Florida, filed its Opposition to Defendants' Amended Motion (Doc. #23) on June

10, 2013.  Defendants filed their Reply to Plaintiff's Opposition (Doc. #30) on June 17,

---

[1] Disclaimer:  Documents filed in CM/ECF may contain hyperlinks to other documents or Web sites. These hyperlinks are provided only for users' convenience.  Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees.  By allowing hyperlinks to other Web sites, this court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites.  Likewise, the court has no agreements with any of these third parties or their Web sites.  The court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.

[2] On May 6, 2013, Defendants filed a Motion to Transfer Venue or, in the Alternative, Dismiss Action with Prejudice (Doc. #8), which was denied without prejudice on May 7, 2013, for failure to comply with Local Rule 3.01(g).

2013.  Plaintiff filed its Sur-Reply (Doc. #36) on July 9, 2013.  Thus, the Motion is now ripe for review.

## BACKGROUND

Plaintiff initiated this action by filing a two-count Complaint for Recovery of Damages (Doc. #1) on March 15, 2013.  The Complaint alleges that Plaintiff suffered losses estimated to be in excess of $31 million as a result of the legal malpractice of Defendants Nason Yeager Gerson White & Lioce, P.A., and its attorneys Alan I. Armour, II and Ryan P. Aiello.

Plaintiff Federal Deposit Insurance Corporation ("FDIC") is a corporation organized under 12 U.S.C. § 1811, et. seq., and charged with, among other duties, the orderly liquidation of failed banks.  Orion Bank was chartered as a Florida bank and was a Federal Reserve Member.   On November 13, 2009, the Federal Reserve Bank ("FBR") closed Orion and the FDIC was named as receiver ("FDIC-R").   Defendant Nason Yeager Gerson White & Lioce, P.A., ("Nason Yeager") is a professional corporation registered and engaged in the practice of law in Florida.  Nason Yeager is headquartered in West Palm Beach, Florida.  Defendant Alan I. Armour, II ("Armour") is an attorney licensed to practice in Florida.  Armour is a partner at Nason Yeager and resides in West Palm Beach.  Defendant Ryan P. Aiello ("Aiello") is an attorney licensed to practice in Florida.  During all relevant times, Aiello was employed as an attorney by Nason Yeager, and is now an associate with Dinsmore & Shohl LLP, in Ohio.

In both Counts, Plaintiff alleges that Defendants committed legal malpractice. According to the Complaint, by May 2009, the Bank had extended over $43 million in credit to entities owned and controlled by Francesco Mileto ("Mileto"), thereby reaching

Florida's legal lending limit of approximately $41 million with respect to him.  Plaintiff alleges that on June 10, 2009, Orion retained Defendants to prepare documents in connection with a total of $82 million in loans and lines of credit to Southeast Retail Portfolio One, LLC ("Southeast") and Florida Metro One, LLC ("Metro").  According to the Complaint, Mileto had ownership interest in and demonstrated actual control over both Southeast and Metro, causing the Bank's officers to express to Defendants their concern over the legal lending limit.  Nonetheless, the Bank approved the loans.

Plaintiff alleges that the Southeast/Metro loans originally included proposed stock loans that would have financed Mileto's purchase of stock in the Bank's holding company, Orion Bancorp, Inc. ("Bancorp").  Upon learning that Florida law prohibited the Bank from financing a borrower's purchase of stock in the Bank's own holding company, Bank officers notified Defendant Aiello that the proposed stock loans would not go forward as part of the Southeast/Metro loans.  Nonetheless, Plaintiff alleges that $15 million of the loans was ultimately wired back to the Bank for Mileto's purchase of stock in Bancorp.  Plaintiff alleges that by October 2009, regulators uncovered the illegal stock loans and ordered the Bank to reverse the $15 million capital contribution from the Southeast/Metro loans.  On November 13, 2009, Orion was closed, suffering losses on the Southeast/Metro loans estimated to exceed $31 million.

In Count I, Plaintiff alleges breach of fiduciary duty.  Plaintiff asserts that the Defendants, as attorneys for Orion, owed the Bank a fiduciary duty to warn the Bank if they became aware of any unauthorized or illegal behavior by the Bank's officers.  Plaintiff alleges that Defendants breached their fiduciary duties by failing to report the Bank's officers' unauthorized efforts to disburse millions of dollars to "an obviously

suspicious borrower."  (Doc. #1, ¶ 41).  Furthermore, Plaintiff alleges that Defendants assisted the Bank's officers in violating both Florida law and the directives of the Bank's Board Loan Committee ("BLC").  Specifically, the Complaint alleges that Defendants allowed the Bank's officers to approve loans that exceeded the legal lending limit and were used to finance the Bank's own capital contributions.

In Count II, Plaintiff asserts a cause of action for professional negligence against Defendants.  Plaintiff alleges that Defendants, as attorneys for the Bank, owed the Bank a duty to exercise reasonable care, skill, and diligence.  Plaintiff alleges that Defendants breached their duty of care by failing to recognize or respond to "red flags" surrounding the Southeast/Metro loans.  Specifically, Plaintiff alleges that Defendants should have recognized that Mileto was the true principal of Southeast and Metro and that the wiring back of $15 million from the Southeast/Metro loans to purchase stock was a stock loan.

Defendants move to transfer the venue of this action to the Southern District of Florida, pursuant to 28 U.S.C. § 1406(a).  Alternatively, Defendants move to dismiss Plaintiff's Complaint with prejudice pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim as required by Fed. R. Civ. P. 8.

## DISCUSSION

### I.    Motion to Transfer Venue

Pursuant to 28 U.S.C. § 1406(a), "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  Venue is governed by 28 U.S.C. § 1391(b), which provides:

> A civil action may be brought in: (1) a judicial district in which any
> defendant resides, if all defendants are residents of the State in which the

district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).  The Complaint in this case relies on the provision that the Middle District of Florida is "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred."  (Doc. #1, ¶ 10); 28 U.S.C. § 1391(b)(2).

The Eleventh Circuit has interpreted the identical language of the former 28 U.S.C. § 1391(a)(2) to emphasize the importance of the place where the wrong was committed, stating that "only the events that directly give rise to a claim are relevant." Jenkins Brick Co. v. Bremer, 321 F.3d 1366, 1371-72 (11th Cir. 2003).  The Jenkins Court also stated that "only those locations hosting a 'substantial part' of the events are to be considered [and] only those acts and omissions that have a close nexus to the wrong" are relevant.  Id. at 1371-72.  If it is a proper venue, the Court gives considerable deference to the plaintiff's choice of forum.  In re Ricoh Corp., 870 F.2d 570, 573 (11th Cir. 1989) (citing Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508, 67 S. Ct. 839, 843, 91 L. Ed. 1055 (1947)).  Thus, when a plaintiff relies on § 1391(b)(2) to establish venue, the court engages in a two-step analysis:

First, a court should identify the nature of the claims and the acts or omissions that the plaintiff alleges give rise to those claims.  Second, the court should determine whether a substantial part of those acts or omissions occurred in the district where the suit was filed, that is, whether significant events or omissions material to [those] claims . . . have occurred in the district in question.

Infinite Growth Group v. Infinite Growth Assoc., No. 2:10-cv-85-FtM-29DNF, 2010 WL 3190613, at *1 (M.D. Fla. Aug. 11, 2010) (quoting Daniel v. American Bd. of Emergency Medicine, 428 F.3d 408, 432 (2d Cir. 2005)).

For the purpose of venue, "substantiality" is:

a quantitative inquiry, determined by assessing the overall nature of the plaintiff's claims and the nature of the specific events or omissions in the forum, and not by simply adding up the number of contacts. When material acts or omissions within the forum bear a close nexus to the claims, they are properly deemed "significant" and, thus, substantial, but when a close nexus is lacking, so too is the substantiality necessary to support venue.

Jenkins Brick Co., 321 F.3d at 1371-72.  When determining which activities to consider, the court should "focus on the relevant activities of the defendant, not of the plaintiff." Id.; see also Watson v. Community Educ. Centers, Inc., No. 2:10-cv-00778-36SPC, 2011 WL 3516150, at *3 (M.D. Fla. Aug. 11, 2011) ("For the purposes of the venue statute, the analysis focuses on the relevant activities of the defendants, not of the plaintiff.").  However, courts have also recognized that substantial events occurred in a venue when harm was suffered in that venue.  Mobile Diagnostic Imaging, Inc. v. Gormezano, No. 12-60888-CIV, 2012 WL 3244664, at *2 (S.D. Fla. Aug. 9, 2012); see also Jenkins Brick Co., 321 F.3d at 1372; Sanchez v. Pinegree, 494 F. Supp. 68, 70 (S.D. Fla. 1980); United States v. Secretary, Florida Dept. of Corrections, No. 12-22958-CIV, 2012 WL 6626818, at *2 (S.D. Fla. Dec. 19, 2012).

The Complaint relies on 28 U.S.C. § 1391(b)(2) as the basis for venue in the Middle District of Florida.  (Doc. #1, ¶ 10).  The relevant facts show that the Bank, located in Naples, Florida, retained Defendants, whose office is in West Palm Beach, Florida, as legal counsel.  Defendants prepared documents on behalf of the Bank for the Southeast/Metro loans and lines of credit, disbursed monies to the Bank's clients, and communicated with the Bank's clients concerning those monies from West Palm Beach, Florida.  Plaintiff alleges that Defendants' failure to heed "red flags" surrounding the Southeast/Metro loans resulted in the Bank issuing illegal stock loans, which were

uncovered by regulators in October 2009.   Plaintiff alleges that as a result of Defendants' activities, the Bank was closed on November 13, 2009, suffering approximately $31 million in losses on the Southeast/Metro loans.

Defendants argue that venue is improper in this District because Nason Yeager provided its services to the Bank directly through Armour and Aiello, who at all times, performed work with respect to the Southeast/Metro loans in or near West Palm Beach, in the Southern District of Florida.   Defendants state that Armour or Aiello never communicated with the Bank while physically within the Middle District of Florida in connection with the subject transactions.   Additionally, Defendants assert that neither attorney ever met with any of the Bank's employees or carried out any necessary tasks while present in the Middle District.   Defendants argue that their alleged activities occurred within the Southern District, and that, further, they have conducted no relevant activities in the Middle District.   Based on these facts, Defendants argue that the only proper venue for this action is the Southern District.

Plaintiff responds that venue is proper in this District because activities occurred in this District, including the Bank's officers' communications with Defendants from this District involving properties located in this District, Mileto and three of the Bank's officers were criminally convicted in this District, and the Bank was harmed in this District.

The Court agrees with Plaintiff's argument that venue is proper in the Middle District because the Bank suffered harm in this District.   Courts have recognized that venue is appropriate in the district where a plaintiff suffers harm or injury.   United States v. Secretary, Florida Dept. of Corrections, 2012 WL 6626818, at *2 (S.D. Fla. Dec. 19, 2012); see also Jenkins Brick Co., 321 F.3d at 1372; Mobile Diagnostic Imaging, Inc.,

2012 WL 3244664, at *2; Sanchez, 494 F. Supp. at 70.  In Sanchez, the court found that although a state statute was administered in the Northern District of Florida, venue was proper in the Southern District of Florida because the effect of the statute was felt in the Southern District and plaintiffs suffered their injuries from the administration of the statute in the Southern District.  494 F. Supp. at 70.  Similarly, in this case, although Defendants conducted all of their business with the Bank from the Southern District, the effect of Defendants' actions was felt in the Middle District.  The loans were ultimately administered in this District with Defendants' alleged assistance; Defendants' instructions to clients were executed in this District; the Bank was closed as a result of the illegal loans in this District; and the Bank's alleged losses of approximately $31 million occurred in this District.  Therefore, all of the Bank's injuries were sustained in the Middle District.  There is a "close nexus" between the alleged wrongful conduct and the Middle District; Defendants are not being "hailed into a remote district having no real relationship to the dispute."  See Hemispherx Biopharma, Inc. v. MidSouth Capital, Inc., 669 F. Supp. 2d 1353, 1358 (S.D. Fla. 2009) (quoting Woodke v. Dahm, 70 F.3d 983, 985 (8th Cir. 1995)).

While the Court recognizes that Defendants have argued that venue is improper because the Court's focus should be on the Defendants, who were located in and performed work in the Southern District of Florida at all relevant times, Jenkins Brick Co., 321 F.3d at 1371-72, pursuant to 28 U.S.C. § 1391(b)(2), a claim may "arise" in more than one district.  Id. at 1371.  When venue is proper in more than one district, a plaintiff is "not required to select the venue with the *most* substantial nexus to the dispute, so long as it chooses a venue where a substantial part of the events giving rise

8

to the claim occurred." Careplus Health Plans, Inc. v. Crespo, No. 8:05CV2010-T-27MAP, 2006 WL 1382102, at *2 (M.D. Fla. May 19, 2006) (internal quotations omitted). A plaintiff's initial choice of forum, if a proper venue, is therefore given substantial deference. In re Ricoh Corp., 870 F.2d at 573 (citing Gulf Oil Corp., 330 U.S. at 508, 67 S. Ct. at 843, 91 L. Ed. 1055). Thus, although this case could have been brought in the Southern District, the Middle District is also an appropriate venue for Plaintiff's claims based on the substantial harm suffered by the Plaintiff, who is bringing this suit on behalf of the Bank's depositors, accountholders, creditors, and stockholders. (Doc. #1, ¶ 4).

Thus, Plaintiff has shown that venue is appropriate in the Middle District because a substantial part of the events or omissions giving rise to its claim occurred in this District. Consequently, Defendants' Motion to Transfer Venue pursuant to 28 U.S.C. § 1406(a) is denied.

**II.     Motion to Dismiss**

Alternatively, Defendants move to dismiss Plaintiff's Complaint with prejudice pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim as required by Fed. R. Civ. P. 8. To satisfy the pleading requirements of Fed. R. Civ. P. 8, a complaint must simply give the defendants fair notice of what the plaintiff's claim is and the grounds upon which it rests. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007); Swierkiewicz v. Sorema N.A., 534 U.S.  506, 512, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002). Although the pleading standard announced in Fed. R. Civ. P. 8 does not require "detailed factual allegations," it does demand more than an unadorned, "the-defendant-unlawfully-harmed-me accusation." Sinaltrainal v. Coca-

Cola Co., 578 F. 3d 1252, 1268 (11th Cir. 2009) (citing Ascroft v. Iqbal, ---- U.S.----, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868  (2009)).  Furthermore, unwarranted deductions of fact in a complaint are not admitted as true for the purpose of testing the sufficiency of the allegations.  Sinaltrainal, 578 F.3d at 1268 (citing Aldana v. Del Monte Fresh Produce, N.A., Inc., 416 F.3d 1242, 1248 (11th Cir. 2005)).  The facts as pled must state a claim for relief that is plausible on its face.  Sinaltrainal, 578 F.3d at 1268 (citing Iqbal, 129 S. Ct. at 1950).

In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff. Bedasee v Fremont Investment & Loan, 2010 WL 98996 * 1 (M.D. Fla. Jan. 6, 2010) (citing Erickson v. Pardus, 551 U.S. 89, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007)); Christopher v. Harbury, 536 U.S. 403, 406, 122 S. Ct. 2179, 153 L. Ed. 2d 413 (2002). "To survive dismissal, the complaint's allegations must plausibly suggest that the [plaintiff] has a right to relief, raising that possibility above a speculative level; if they do not, the plaintiff's complaint should be dismissed." James River Insurance Co. v. Ground Down Engineering, Inc., 540 F.3d 1270, 1274 (11th Cir. 2008) (citing Twombly, 550 U.S. at 555-56).  The former rule-that "[a] complaint should be dismissed only if it appears beyond doubt that the plaintiffs can prove no set of facts which would entitle them to relief," La Grasta v. First Union Securities, Inc., 358 F.3d 840, 845 (11th Cir. 2004), has been retired by Twombly.  James River Insurance Co., 540 F.3d at 1274. Thus, the Court engages in a two-step approach: "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 129 S. Ct. at 1950.  Dismissal is

warranted under Fed. R. Civ. P. 12(b)(6) if, assuming the truth of the factual allegations of plaintiff's complaint, there is a dispositive legal issue which precludes relief. Bedasee, 2010 WL 98996 at * 1 (citing Neitzke v. Williams, 490 U.S. 319, 326, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989)); Brown v. Crawford County, 960 F.2d 1002, 1009-10 (11th Cir. 1992).

In ruling on a Rule 12(b)(6) motion, the court focuses principally on the complaint, but may also consider documents attached to a pleading.  See Fed. R. Civ. P. 10(c).  The Court has considered the Complaint, to which no exhibits were attached. One exhibit, the Declaration of Defendant Alan I. Armour, II, was attached to the Motion to Transfer/Dismiss.  (Doc. #1, Ex. 1).  Plaintiff does not dispute the contents of the exhibit.  Thus, the Court may properly consider the exhibit in deciding the Motion to Dismiss.  Fed. R. Civ. P. 10(c).

With regard to all Defendants, Plaintiff has brought Count I for legal malpractice, asserting that Defendants breached their fiduciary duty owed to the Bank by failing to report or otherwise prevent the Bank's officers from disbursing millions of dollars to an obviously suspicious borrower and for assisting the Bank's officers in violating Florida law and the directives of the Bank's BLC.  Also with regard to all Defendants, Plaintiff has brought Count II for legal malpractice for professional negligence in failing to recognize and/or respond to obvious red flags surrounding the Southeast/Metro loans. Defendants attack these Counts based on Rule 12(b)(6) of the Federal Rules of Civil Procedure, essentially arguing that Plaintiff has not alleged enough facts to state a claim for legal malpractice under either theory.

**a.  Legal Malpractice – Breach of Fiduciary Duty (Count I)**

Defendants attack Count I for failure to establish the existence of a fiduciary relationship.  Although the Complaint alleges that Defendants should have known of the purported "red flags surrounding the Southeast/Metro Loans" (Doc. #1, ¶ 45), Defendants argue that this does not automatically impose a fiduciary relationship on them.  Defendants assert that there are no allegations that the Bank depended on Defendants to discover and disclose any red flags evidencing the Bank's fraudulent and criminal activity.  Additionally, Defendants argue that there are no allegations that they were tasked with rendering advice or counsel in connection with preparing the loan transaction documents.  Defendants also state that the Complaint does not allege that the Bank was a "weaker party" that placed its trust in Defendants, thereby imposing on Defendants a duty to protect the Bank.  Furthermore, Defendants argue that the Complaint contains no allegations that they recognized, accepted, or undertook the duties of a fiduciary.

Defendants also argue that even if they owed a fiduciary duty to the Bank, the Bank's consent to the disbursement of $26.5 million to Southeast and Metro precludes Plaintiff's breach of fiduciary duty claim.  In support, Defendants rely on Redland Estates, Inc. v. Lynn, 920 So. 2d 1218 (Fla. Dist. Ct. App. 2006), which holds that an attorney's disbursement of funds, as escrow agent, from a third party to her own client does not constitute a breach of fiduciary duty when both parties expressly agreed to the release of the funds prior to the date of disbursement.  920 So. 2d at 1219.  The instant case significantly differs from Lynn, however, in that this case involves attorneys disbursing their clients' own funds despite alleged warning signs that the client's

purported authorization to do so was fraudulent or otherwise suspect.  Thus, the Court is not persuaded that Lynn is controlling under the circumstances of the instant case.

Under Florida law, there are three elements of breach of fiduciary duty:  "the existence of a fiduciary duty, a breach of that duty, and plaintiff's damages proximately caused by the breach."  Gracey v. Eaker, 837 So. 2d 348, 353 (Fla. 2002).  "To establish a fiduciary relationship, a party must allege some degree of dependency on one side and some degree of undertaking on the other side to advise, counsel, and protect the weaker party."  Bankest Imports, Inc. v. ISCA Corp., 717 F. Supp. 1537, 1540 (S.D. Fla. 1989).  Florida law recognizes that the attorney-client relationship places a fiduciary duty on the attorney.  F.D.I.C. v. Martin, 801 F. Supp. 617, 620 (M.D. Fla. 1992) (denying summary judgment  for breach of fiduciary duty based on evidence that the defendants had actual knowledge of the circumstances surrounding loan transactions because members of the defendant law firm had engaged in communications concerning the loans) (citing Armour & Co. v. Lambdin, 154 Fla. 86, 16 So. 2d 805 (1944)); see also Weaver v. Mateer and Harbert, P.A., No. 5:09-cv-514-Oc-34TBS, 2012 WL 3065362, at *9 (M.D. Fla. 2012) ("There is no dispute that the attorney-client relationship creates a fiduciary duty on the part of the attorney").  Mere allegations that a defendant attorney "should have known" of legal problems, however, is insufficient to allege a duty; the complaint must allege facts supporting actual knowledge.  McCarty v. Browning, 797 So. 2d 30, 31 (Fla. Dist. Ct. App. 2001).  Therefore, an attorney breaches the fiduciary duty upon failing to "make a full and fair disclosure of material facts to a person reposing confidence in him."  Martin, 801 F. Supp. at 620.  However, attorneys are not required to fully investigate their client's

activities.  In re Cascade Intern. Securities Litigation, 840 F. Supp. 1558, 1564 (S.D.

Fla. 1993) ("The Court will not go so far as to require law firms to fully investigate their

clients at any hint that they may be conducting fraudulent activities, and then to punish

the law firms if they do not do so").

In the instant case, Plaintiff has alleged that an attorney-client relationship

existed between Defendants and the Bank.  The Complaint alleges that on June 10,

2009, the Bank retained Defendants to represent Orion in connection with $82 million

worth of loans and lines of credit.  (Doc. #1, ¶¶ 1, 15).  Plaintiff also alleges that

Defendants prepared documents in connection with those loans and lines of credit,

disbursed funds on behalf of the Bank to its clients, communicated with the Bank

regarding the loans and transmitted instructions regarding those funds on behalf of the

Bank.  (Id. at ¶¶ 15, 18, 24, 25).  Specifically, Plaintiff alleges that the Southeast/Metro

loans originally included proposed stock loans that would have financed Mileto's

purchase of stock in the Bank's holding company, Bancorp.  Upon learning that Florida

law prohibited the Bank from financing a borrower's purchase of stock in the Bank's own

holding company, Bank officers notified Defendant Aiello that the proposed stock loans

would not go forward as part of the Southeast/Metro loans.  Nonetheless, Plaintiff

alleges that $15 million of the loans was ultimately wired back to the Bank for Mileto's

purchase of stock in Bancorp.  Thus, Plaintiff has alleged facts supporting its allegation

that Defendants had actual knowledge of circumstances surrounding the loan

transactions and owed a fiduciary duty to the Bank.

The Complaint also alleges that Defendants breached this duty by failing to

report or otherwise attempting to prevent the Bank's officers from disbursing millions of

dollars to a suspicious borrower.  (Id. at ¶¶ 2, 26, 30, 32, 41).   According to the Complaint, by May 2009, the Bank had extended over $43 million in credit to thirteen entities owned and controlled by Mileto, thereby reaching Florida's legal lending limit with respect to him.  (Id. at ¶¶ 1, 14).   The Complaint alleges that Defendants represented the Bank in twelve of those transactions and as such, Defendants were aware that the Bank had reached its legal lending limit of $41 million with respect to Mileto.  (Id. at ¶ 22).  Plaintiff alleges that the Bank's officers expressed their concern over the legal lending limit and informed Defendants that their number one concern was that the transactions with Southeast and Metro be "clearly not with Frank Mileto."  (Id. at ¶ 19).  Defendants allegedly prepared closing documents for $82 million in loans and lines of credit for Southeast and Metro, despite being made aware that the transactions would not go forward without Mileto's approval.  (Id. at ¶¶ 1, 2, 16, 22).  The Complaint further alleges that Defendants failed to report or prevent loan proceeds from being used for unauthorized and improper purposes.  (Id. at ¶¶ 21, 23, 25, 28).  Specifically, the Complaint alleges that when the Bank's officers learned that Florida law prohibited the Bank from financing Mileto's purchase of stock in Bancorp, the officers informed Defendants that the proposed stock loans would not go forward as part of the Southeast/Metro loans.  (Id. at ¶ 19).  The officers allegedly included Defendants in at least one conversation discussing the reasons for their decision.  (Id. at ¶ 20).

The Complaint also alleges that Defendants were aware of the final approved uses for the Southeast/Metro loans because they prepared the closing documents for those loans.  (Id. at ¶¶ 22, 24).  Plaintiff alleges that despite Defendants' awareness of the terms and conditions on the loans, Defendant Aiello transmitted instructions for the

wiring back of a portion of the funds for unauthorized purposes, including the purchase of Bancorp stock.  (Id. at ¶ 25).  Plaintiff alleges that given the previous discussions concerning the illegality of stock loans, Defendants should have been aware that the wiring back of loan funds constituted stock loans.  (Id. at ¶¶ 31, 32).  The Complaint alleges that Defendants did not report the suspicious and deceptive structure of these transactions and negligently assisted the Bank's officers in the unauthorized and illegal acts.  (Id. at ¶¶ 26, 28, 30-32, 41).  Lastly, the Complaint alleges that as a direct and proximate result of Defendants' failure to make the above disclosures, the Bank suffered losses of approximately $31 million on the Southeast/Metro loans.  (Id. at ¶ 42).

Based upon the above, the Court finds that Plaintiff has alleged that Defendants owed a fiduciary duty to the Bank and had knowledge of material facts, as set forth above, relating to misconduct by the Bank's officers, but that they did not report the misconduct, thereby breaching their duty and causing harm to the Bank.  Accordingly, the Court finds that Plaintiff has alleged sufficient facts, pursuant to the pleading standard set forth in Twombly, to state a claim against Defendants for breach of fiduciary duty constituting legal malpractice.  Arguments regarding whether there is a genuine issue of material fact as to whether a breach occurred is for summary judgment.

### b.  Legal Malpractice – Professional Negligence (Count II)

Under Florida law, "[a] legal malpractice claim, which is the designated professional negligence alleged in the complaint before us, has three elements: '(1) the attorney's employment, (2) the attorney's neglect of a reasonable duty, and (3) the attorney's negligence [as] the proximate cause of the client's loss.'"  Rocco v. Glenn,

*Rasmussen, Fogarty & Hooker, P.A.*, 32 So. 3d 111, 116 (Fla. Dist. Ct. App. 2009) (internal quotations omitted); see also *Jackson v. BellSouth Telecommunications*, 372 F.3d 1250, 1281 (11th Cir. 2004); *Mengle v. Goldsmith*, No: 2:09-CV-46-FtM-29SPC, 2011 WL 1058852, at *5 (M.D. Fla. Mar. 21, 2011). An attorney's liability for professional negligence is limited to clients with whom the attorney shares privity of contract. *Mengle*, 2011 WL 1058852, at *5. It is not sufficient to merely assert an attorney-client relationship; it must be asserted that the relationship existed with respect to the acts or omissions that form the basis of the malpractice claim. *Kates v. Robinson*, 786 So. 2d 61 (Fla. Dist. Ct. App. 2001). "An attorney's reasonable duties include the duty of care, which requires an attorney to have the knowledge and skill necessary to confront the circumstances of each case." *Resolution Trust Corp. v. Holland & Knight*, 832 F. Supp. 1528, 1530 (S.D. Fla. 1993). Although breach of fiduciary duty and professional negligence are separate causes of action under Florida law, courts analyze the elements of neglect of duty and proximate cause in the same way under both theories. See id. at 1532.

The Complaint alleges the following in regard to the existence of an attorney-client relationship between the Bank and Defendants: "In June 2009, Orion retained the Defendants to represent the Bank in connection with $82 million worth of new loans and lines of credit to entities controlled and/or owned by . . . Mileto." (Doc. #1, ¶¶ 1, 15). Plaintiff alleges that the acts or omissions that form the basis of its malpractice claim involve Defendants failing to recognize and/or respond to red flags surrounding the Southeast/Metro loans, including the use of those loans for Mileto's purchase of stock in Bancorp. (Id. at ¶¶ 2, 22, 26, 31, 32, 45). As Defendants were retained to represent the

Bank with respect to those loans, the Complaint alleges sufficient facts to establish that the attorney-client relationship between Defendants and the Bank existed with respect to the acts or omissions that form the basis of the professional negligence claim.

Plaintiff argues that as the Bank's legal counsel, Defendants had a duty to recognize the "red flags" surrounding the Southeast/Metro loans.  Plaintiff alleges that Defendants breached their duty, proximately causing the Bank's loss of an estimated $31 million.  (Id. at ¶ 46).  In supporting its allegations, Plaintiff relies on the same facts that it asserted under the claim for breach of fiduciary duty.  As the analysis is also the same for both causes of action, the Court refers to its discussion of breach of duty and proximate cause under Count I.  Thus, the Court finds that Plaintiff has alleged sufficient facts to state a claim against Defendants for legal malpractice constituting professional negligence.

### c.  Defenses

Defendants also argue that Plaintiff's claims should be dismissed pursuant to Federal Rule 12(6)(6) because the claims are precluded by the defenses of *in pari delicto* and unclean hands.  Specifically, Defendants point to the fact that Mileto and three of the Bank's officers have been convicted of crimes relating to the Bank's closure, including bank fraud, and that under the imputation doctrine, the Bank is liable for the crimes of, or "stands in the shoes" of, its officers.

As an answer has not been filed in this matter, these appear to be affirmative defenses that are being raised by Defendants for the first time.  Generally a motion to dismiss filed by a defendant pursuant to Federal Rule 12(b)(6) challenges the sufficiency of the allegations within the complaint, while an answer admits or denies

those allegations and raises any available affirmative defenses.  Whether a complaint states a claim upon which relief can be granted generally does not depend on whether a defendant has an affirmative defense to a plaintiff's claims.  See Brown v. One Beacon Ins. Co. Inc., 317 F. App'x 915, 916 (11th Cir. 2009) ("Generally, the existence of an affirmative defense will not support a motion to dismiss.").  "Nevertheless, a complaint may be dismissed under Rule 12(6)(6) when its own allegations indicate the existence of an affirmative defense, so long as the defense clearly appears on the face of the complaint."  Id. at 916-17.  "If the complaint contains a claim that is facially subject to an affirmative defense, that claim may be dismissed under Rule 12(b)(6)."  LeFrere v. Quezada, 582 F.3d 1260, 1263 (11th Cir. 2009).   These often encompass such affirmative defenses as res judicata and statute of limitations.  See Brown, 317 F. App'x 915.  "Our usual practice is to consider affirmative defenses . . . on summary judgment pursuant to Federal Rule of Civil Procedure 56."  Bryant v. Rich, 530 F.3d 1368, 1380-81 (11th Cir. 2008); Singleton v. Dep't of Corrections, 277 F. App'x 921, 923 (11th Cir. 2008).

Unclean hands and *in pari delicto* are affirmative defenses.  Here, the allegations on the face of Plaintiff's Complaint do not indicate the existence of these affirmative defenses such that consideration of these defenses on a Rule 12(6)(6) motion to dismiss is appropriate.

Accordingly, it is now

**ORDERED:**

(1) Defendants Nason Yeager Gerson White & Lioce, P.A., Alan I. Armour, II, and Ryan P. Aiello's Amended Motion to Transfer Venue or, in the Alternative, Dismiss Action with Prejudice (Doc. #14) is **DENIED**.

(2) Defendants are **directed** to file an answer to Plaintiff's Complaint within twenty-one (21) days of the date of this Order.

**DONE** and **ORDERED** in Fort Myers, Florida this 22nd day of July, 2013.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  All Parties of Record